^Opinion of the court, by
Judge Burnet.
The question to be decided is, was there a partnership at the date of the note, so as to render Williams liable to this action.
*95 On the part of Williams, it is contended, that these articles do-not show a partnership, at the time the note was given, but only a-project for a partnership, to be consummated at a future day.
For the plaintiff, it is insisted that the contract created a complete partnership from the moment it was signed, and that the-stipulations as to what each partner shall do, are nothing more than a distribution of the services to be performed by each, for, and on account of the joint concern.
In deciding the question submitted, it is necessary to ascertain what constitutes a partnership in the view of the law. Having donoso, we may determine the true construction of this contract, and whether it did or did not create a partnership between the parties, from the time of its execution.
A partnership has been defined to be “ a contract of an association, by which two or more contribute money, goods, or labor, to the end that the profits may be ratably divided between them.” This definition, as far as it goes, is said to.be unexceptionable; but it is incomplete, as to third persons, between whom and the parties the question most frequently arises. In this respect, it is observed that he who shares in the profits ought to bear his portion of the^ losses, because by taking the profits he takes the fund on which the creditor relies for payment. In order to constitute a partnership so - as to make a person liable as a partner, there must bo some agreement between him and the ostensible person to share in the profits, or he must have permitted the ostensible person to 'use his credit, and to hold him out as one jointly answerable with himself. 1. Com. on Cont. 286 ; Doug. 371.
In order to constitute a partnership, a communion of profit and-' loss between the parties is essential, and this is the true criterion to judge by, when the question is, whether persons are parties or not. 1 H. Blac. 43, 48. Where one takes a moiety of the profits, he shall, by operation of law, be made liable for losses. 2 H. Blac. 247. But where an agreement was made for the purchase of goods, in the name of one, for the benefit of several, but the agreement did not extend to a joint sale of the goods, a majority of the court held that it was not a partnership, but had the agreement extended to the sale as well as the purchase, all would have been liable, though but one was known in the purchase. 1 H. Blac. 37. Though in-*point of fact, parties are not partners, yet if one so represent himself, and by that means gets credit for the other, both shall ba *96 liable. 1 Esp. 29. In the case of Waugh v. Carver and Giesler, 2 H. Blac. 235, it was admitted that the parties to the contract did not intend to become partners, or to carry on trade at the risk of each other, or to become liable for each other’s losses, but yet it was. determined that as to third persons they were partners, because it appeared from certain parts of the agreement that they intended to share the profits. This case was decided principally on the authority of Grace v. Smith, 2 Blac. 998, in which it was settled that every man who takes a share of the profits, ought, by operation of law, to bear his share of the loss. Let these principles be applied to the case before us, and there does not appear to be any room for serious doubt. It might have been the intention of the parties to the agreement that each person should pay for the articles or goods he purchased; but the expectation of partners is not to affect the legal right of their creditors. The question is not simply, what the parties intended by the contract, but whether third persons had not a right to rely on their joint credit. To determine this we must refer to the agreement itself. The first provision is, that the three parties to the contract, do agree to erect and build a distillery jointly, to share and share alike the cost of said establishment. The defendant, Williams, is to lease a certain lot for the use of the establishment, to continue for the term of fifteen years and to commence from the time of signing the said instruments. He agrees on his part to erect the necessary buildings — Gardner and Chase agree, on their part, to provide the stills and worms for said establishment. A store of goods shall be established, to be furnished by Gardner and Chase. After the establishment shall be complete, the goods and stills on the spot, the whole establishment, goods, etc., to be equally owned by the three partners. From this it appears that the parties were all equally interested in the establishment. They were to be joint owners of the goods, which were to be sold at their store, for their common benefit. They were -consequently to participate in the profits.
Again. It would seem that the term, establishment, as used in the agreement, was intended to embrace the whole concern of the parties, and to include the store, as well as the distillery. If this inference be correct, no doubt can remain, as the first article in the contract provides, that the parties shall share and share alike the most of the establishment. The cost of an establishment must -^include all moneys expended, and all debts contracted in the completion of it, which would, in this ease, include the debt on which-the suit is brought. The mind seems to be irresistibly led to this conclusion from the consequences that adifferent construction would produce on the parties themselves. Admit for a moment that the-defendant’s construction is to be sustained, and what is the consequence? Williams, on his part, is to furnish the ground and to erect the buildings, at the joint cost of all the parties. Chase- and Gardner, on their parts, are to furnish the stills, worms, and goods at their own individual cost; and when all are furnished, each is to be an equal owner of the whole. The injustice of such a construction, must be apparent.
But if it be admitted that the store was not considered as a part, of the establishment, but merely as an appendage, the same conclusion seems to follow, for as the principal establishment was by express stipulation to be erected at the joint cost of all the parties, the appendage to the establishment must be provided on the same terms. Justice requires it — the common sense of mankind requires it.
Had it been the intention of the parties to provide for a partnership, to commence at a future day after each of the parties had furnished his portion of the stock, the contract would have contained some stipulation as to the amount to be furnished by each, and that, it should be on his own credit, so that each might bring into the* common stock an equal portion of it. But nothing is said on this subject. Each party is left to his own discretion. The building-may cost much or little — the assortment of goods may be small or extensive — yet each is to be equally interested in, and an equal owner of the whole.
In forming an establishment of this kind, various duties and services were to be performed, and it was natural to distribute these-among the parties with reference to their different capacities; hence we find that Williams was to have the building erected, and. the other partners were to lay in the goods. This consideration-will sufficiently account for this part of the arrangement, without searching for any other cause, and when in connection with this it. is considered that all the disbursements and engagements of Williams, in performing his part of the contract, were to be at the joint , cost of the concern, it seems to remove all doubt as to the understanding of the parties themselves on this point.
But some stress has been laid on the clause, that “ an equal pro *97 portionate *of the amount paid by each shall take place, and a [97 full adjustment be made.” What we are to understand by an equal proportionate in this case can not be easily told, as that^erm is never used in any sense in which it can be understandingly applied in the connection in which we here find it. The meaning of it may be ascertained by determining what the intelligible parts of the contract require it should be. It is certain that a partnership is provided for — that a distillery is to be established — that the parties are to share and share alike the cost of the establishment — that a store of goods is to be furnished — that the parties are to perform different services in getting the establishment into operation — and that they are to be joint and equal owners of it. These provisions would seem to require another, that each party should render an account of his purchases and payments, in order to ascertain- the whole amount of capital, the sum advanced by each, and the debt contracted on the credit of the company, by which their situation would be known, and their accounts could be correctly stated and adjusted. But in such a provision we can not see anything inconsistent with the commencement of a partnership from the date of the contract.
Great reliance is placed on the case of Saville v. Robertson, which the defendants consider as establishing the construction for which they contend. Independent of the fact that the court were divided in that case, we can not but view it as operating rather against the construction they contend for, inasmuch as the leading facts on which a majority of the court found their opinion do not exist in this agreement, and in the absence of those facts it can scarcely be doubted that the whole court would have concurred with Ashhurst ; but let us examine the case, and compare it with the one before us. In Saville’s case, each individual was to have an interest in the cargo equal to the amount of goods he might furnish. In this case, each party was to have an equal interest in the whole establishment. In that case the contract extended to a single voyage only, at the expiration of which each party was to receive back the amount of cargo he had furnished. In this case the contract was to continue fifteen years, and the interest of the parties was not governed by the amount furnished by each. In that case it was expressly stipulated, that the parties should not be liable for the engagements of each other. In this case it is as expressly stipulated that the parties shall share and share alike the cost of the establishment. In *98 that case the copper for which the suit was brought was purchased on the individual credit of Pearce, who did not take the name of %ny other person into market, nor did the seller look to the responsibility of any other. In the casebefore us, Chase took the names .of all the parties into market, and the goods were purchased on the responsibility of the defendant Williams. In that ease it was stated what should be done on the joint credit of the company, and what on the credit of the members individually; it was provided that one should not be bound by the contracts of another, and no confidence had been created nor any credit obtained in consequence of the association. But in this case there is no such provision. Williams was held out as a partner; his name was carried into market, and the fact of his being a member of the company procured for it all its credit. Connected with these circumstances the facts, that the parties were to share the cost of the establishment — that Williams was to be an equal owner of the goods which were to be sold for their joint account, and that they were all interested in the profits, and it would seem that no doubts can remain. It would certainly be a novel case if Williams was to furnish his part of. the stock at the joint cost of all the parties — Gardner and Chase to furnish their part at their own individual cost, and then each partner should be an equal owner of the whole. Such a construction can not be admitted.
There are other circumstances in the case from which inferences might be drawn; as for example, the language of the article is in the present time — the parties do agree to erect, etc. — the law shall commence from the time of signing the instruments, and the receipt on the back of the article recognizes a liability for debts as well as for costs, but wo have not thought it necessary to dwell on these facts.
We do not discover any serious difficulty in the form of executing the note. The agreement being silent on that subject, the fair presumption arising from all the circumstances is, that the form adopted by Chase was the one agreed on by the parties.
We are clearly of opinion that the partnership commenced from the signing of the articles, and that the plaintiff had a right to look to the credit of all the parties. A new trial, therefore, must be granted.